## Case No. 9,982.

### MUTUAL SAFETY INS. CO. et al. v. CARGO OF THE GEORGE.

[Olc. 157; 8 Law Rep. 363.] [1]

District Court, S. D. New York. June. 1845.

SHIPPING—GENERAL AVERAGE—LOSS BY JETTISON—VALUE OF VESSEL—STRANDED TO SAVE CARGO—ESTIMATING FREIGHT.

1. In the adjustment and settling of general average the contributory interest of the ship is to be estimated at her value at her port of departure, making reasonable allowance for wear and tear on the voyage, up to the time of the disaster.
[Cited in The Star of Hope, 9 Wall. (76 U. S.) 235.]

2. General average on loss by jettison is allotted on the principle that the property pays and receives in contribution upon the basis of loss and value at the time of the sacrifice.
[Cited in Dupont v. Vance, 19 How. (60 U. S.) 171.]

3. As between assurers and assured, the valuation agreed in the policy may be taken on general average, as the value of the property at risk.

4. But the valuation in the policy on the ship is no more than prima facie evidence of her value as against owners of the cargo; her value must be established in the ordinary modes of proofs in respect to their interests.

5. Invoices and bills of lading are admissible evidence of the value of the cargo at the place of shipment.

6. The valuation of freight in the policy may be received as prima facie evidence of its value in favor of and against the ship-owner, on general average.

[1] [Reported by Edward R. Olcott, Esq. 8 Law Rep. 363, contains only a partial report.]

7. In case of total loss of the ship voluntarily stranded for the safety of the cargo, all the property exposed to the risk must contribute, and be contributed for at its value, when the sacrifice was made.

8. The more ancient method of estimating freight at its gross value, both when contributed to and when contributory, held to be preferable to the modern practice of estimating its full value in the first instance, and in the second, diminishing it at discretion, by abating one-fifth, one-third or one-half from its value.

[This was a libel by the Mutual Safety Insurance Company, the American Insurance Company, and the Jackson Marine Insurance Company against the cargo and proceeds of the ship George, to recover a contribution share on general average, claimed to be payable by the cargo because of a voluntary stranding of the vessel by the master in order to save cargo and freight. The underwriters accepted an abandonment and paid a total loss. There was a decree in favor of libellants, and a reference to an auditor to adjust and state the average contribution against the claimants. Case No. 9,981.]

On the coming in of the report of the auditor under the reference of April term last [Case No. 9,981], various exceptions were interposed to the report by the respective parties, and applications were made to the court to change the terms of the interlocutory decree, and to insert other provisions in the final decree.

The hull of the vessel had been sold after the disaster on the beach for a small sum; about two-thirds of the cargo was lost, one-third only saved. The interests to be contributed for were (1) the value of the vessel represented by her underwriters, and valued at $12,000; (2) the freight represented by the underwriters on freight to the extent of the insurance, $4,400, and by the owners of the vessel for the balance; (3) the cargo lost. The interests to contribute to make up this loss were, of course, as to vessel and freight, the same, and the entire cargo. The rate at which the vessel and freight should contribute was the subject of difference of opinion. The insurers on the vessel contended on the authority of the case of Leavenworth v. Delafield, 1 Caines, 573, and on what they asserted to be uniform custom, that to determine the wear and tear of the vessel, one-fifth should be deducted, and the vessel be contributed for upon the balance, or four-fifths. The insurers on freight contended, on the authority of the same case and custom of alleged similar generality, that the freight should only contribute on one-half its gross amount, or, in this case, $3,400, and be contributed for on the whole, the reason of this rule being stated to be the propriety of making a deduction for the expense of earning the freight; and lastly, the underwriters, whether on vessel or freight, contended that the valuations in the policies were to govern.

In the case above cited, the following language was held by Livingston, J., in the supreme court of New-York: After citing Pothier and Marshall, he proceeds (page 579):

"As the rule is not accurately defined by the law of England, and the one adduced applies to cases of jettison only, we are at liberty to make one for ourselves. The injustice of making the ship and freight contribute for their full value has already been stated. The first will be injured by the voyage, and oftentimes the whole freight received will not be equal to the disbursements and expenses to which the owner has been exposed. * * * What value to put on the vessel and freight, and do complete justice, is more difficult, perhaps impracticable. To take their full worth will not do. After the best reflection I have been able to bestow on the subject, I am for valuing the vessel at four-fifths of her original cost, reckoning nothing for provisions or wages paid in advance, and the freight at one-half of the gross sum agreed to be paid. This rule may be deemed arbitrary; so will any that can be devised, and yet, perhaps, it will come as near as any other in producing a contribution in proportion to the real interest of each which may be in jeopardy." For the respondents it was insisted, that this case of Delafield v. Leavenworth did not apply to the present; that the valuations in the policies could not affect third parties, that is, the owners of cargo; that the actual wear and tear of the vessel should be ascertained by evidence, not by any arbitrary deduction, and that the freight should contribute on its whole gross amount.

John Duer and Theo. Sedgwick, for libellants.

Daniel Lord, Jr., for respondents.

BETTS, District Judge. The specific points in contestation, and determined between the parties by the decree of April last, were, that the court has cognizance of the case as one of admiralty and maritime jurisdiction, that the ship was voluntarily stranded for the benefit of the cargo, and although a total loss, her owner was entitled to compensation by way of general average; that the adjustment of average could be made in this port, where the proceeds of the cargo were attached, and that the freight was both subject to contribution, and entitled to a contributory allowance. The frame of the order was not discussed between the parties when adopted, and the claimants, by exception to the report of the auditor, and the libellants, through a direct petition or motion to the court, seek to have portions of the decretal order explained, modified or annulled. To avoid the complexity of cross motions and arguments upon objections in relation to the details of the order, the court permitted the counsel to consider the whole matter open as to the particulars to be embraced in the final decree, beyond the general principles settling the rights of the libellants to recover, and that the argument be directed to the terms asked by the libellants to be inserted in the decree adjusting the contributory interests, or fixing the rules by which they

shall be determined, with the right to the claimants to propose any substantive provisions in the final order not moved by the libellants, and pertinent to the case.

The positions which the libellants maintain are, that the ship is to contribute and receive contributions upon her value agreed in the policy of insurance, deducting one-fifth for wear and tear, conformably to the rule declared by the supreme court of this state, in Leavenworth v. Delafield, 1 Caines, 573. That the cargo saved is to contribute according to its invoice value, and that lost by stranding to be contributed for at a like valuation. That the freight is to be contributed for at its gross value, according to the amount named in the policy, being the sum payable to the ship-owner: and the freight is to contribute on such gross amount less one-half, being its cost or value at the time of loss, according to the rule in Leavenworth v. Delafield, 1 Caines, 573. That the libellants are entitled to a decree in personam against Macy & Co. and Barclay & Livingston, who hold portions of the proceeds of the cargo, or part of the cargo itself, for the amount of such cargo or proceeds and costs, and to a decree against the foreign owners of the cargo, upon a proceeding by foreign attachment for the value of the cargo saved, and not recovered of Macy and the other respondents.

The claimants combat each of these propositions, except the second, and also ask the direction of the court as to the compensation chargeable in behalf of the auditor and adjuster of average. It is understood the latter particular may be arranged between the parties, and it will not, therefore, be further noticed in this opinion. In directing, by the former order, the ship and freight to be valued at the sums named in the policies set forth upon the pleadings, being their true values at the port and time of departure, the court did not overlook the fact that the owners of the cargo were not parties to those policies, and would not be considered, in judgment of law, to have assented to the valuations made in them; nor was the court unaware of the diversity of opinions and usages stated in the books in relation to the basis of valuations which were to be subjects of general average. 1 Cond. Marsh. Ins. 290, 291; 2 Cond. Marsh. 621–623.

The preponderance of authority is believed to be, that the contributory interest of the ship should be estimated at her value at her port of departure (3 Kent, 242; 2 Serg. & R. 258; Benecke, 210; 1 Caines, 573), with proper allowances for wear and tear; that is, upon her value at the time to which the apportionment relates (1 Phil. 358). Other cases indicate that if the ship is sold, her contributory value is to be the sale price. 2 Johns. R. 98. Abbott considers the rule to be that the ship is to be estimated according to her value at the end of the voyage (Abb. Shipp. 356), that is, at her port of destination (2 Marsh. London Ed. 1802, c.

13, § 7). But Benecke combats that doctrine (Benecke, 310), and his conclusions are more in consonance with the principle upon which average is exacted and given, which clearly is, that the property should pay and receive in contribution upon the basis of loss and value at the time of the disaster. The means of measuring these particulars with certainty are not, however, well defined, and different commercial states, and sometimes different tribunals in the same country, are at variance as to the proper method of attaining that end. Weskett, 255; 1 Marsh. (Ed. 1802) c. 13, § 7; 2 Phil. 358; Benecke, 322–325; Stev. Av. pt. 1, art. 3. It is, moreover, not a definitely settled principle whether these methods or means are matters of evidence only, or are raised to rules of decision, and thus become fixed doctrines of law. In the latter case it would belong to the court to determine the amount of the contributory interests, very much as it settles the relative liability of the parties; and in the former, the inquiries would be essentially matters of fact, to be ascertained by ordinary modes of proof.

The case of Leavenworth v. Delafield, 1 Caines, 573, is an instance in which embarrassing questions under a general average are disposed of by the judgment of the court as purely legal, and Gray v. Waln, one where the same particulars were referred to the jury to be passed upon as matters of fact. 2 Serg. & R. 229. The court considered the jury rightfully exercised their discretion in following the reason of the New York case as conducing to certainty, but the decision itself is not sanctioned beyond the special case of capture; 2 Johns. 98; and is regarded an anomaly in its principle by high authority. 2 Phil. Ins. 218. No reason is assigned in the decision for giving an effect to a loss by vis major, different in one case from that of another; so that losses by jettison or capture can stand on different rights to compensation by average. It is to be borne in mind, that the speculations in the English books upon the valuation of the ship as a subject of general average, and essentially so, also, in the American authorities, until the case of Columbia Ins. Co. v. Ashby [Case No. 3,038], had relation to partial injuries by voluntary sacrifice, and not to her total loss. In the latter case no reason is discovered for distinguishing her valuation on general average from that on a claim against her underwriters. In respect to the valuation of the ship, as she is to contribute and be contributed for at her value at the port of departure, with a proper allowance to cover the deterioration at the time of her loss, how are these particulars to be ascertained? As between owners and assurers, the valuation agreed in the policy is ordinarily taken for the purposes of general average, as the value of the ship (Stev. Av. c. 1, art. 2); and Benecke says that valuation is frequently the best guide in determining the contributory interest between all parties concerned (Benecke, 311, 312). Upon the assumption that it belongs to the court to prescribe the means by which the value is to be determined, the policy might, perhaps, be safely adopted as a more reliable approximation to the value than the report of surveyors, or the estimate of casual observers or appraisers. Usually the vessel is examined on the part of the underwriters by an experienced surveyor, having knowledge of her age, build and character, who will be watchful to prevent an over-valuation; and the strong interest of the owner and his agent, on the other hand, to have the policy a sufficient indemnity in case of loss, might, in the conflict of these interests and views, secure an estimate sufficiently near the fair value to answer the purpose of a general rule, which would prevent serious injustice to either party. It is no more arbitrary to declare such valuation to be that on which the average shall be estimated, than to direct one-fifth or one-half (1 Caines, 373; Abb. Shipp. 356; 2 Valin, 294, 295), to be deducted from the proved value at the commencement of the voyage, to determine the worth of the vessel at the time of her destruction. In view of the vagueness and want of uniformity in fixing the contributory value of property subject to general average, with which the courts and text writers have always been embarrassed, the first order in this case adopted the valuation in the policy as the value of ship and freight, and this seems a common method of fixing such value in case of total loss (Stev. Av. 163–167). Yet I am not satisfied the policy can be received as more than prima facie evidence of the value of the ship and freight, admitting it covers no more than her naked valuation, if admissible to that extent, because the parties proceeded against in this action are not parties or privies to the policy on the ship or freight, and I do not find that the practice of taking the valuation in the policy as full evidence to that point is so far recognized in the mercantile law as to require the force of a general usage, and where a legal proposition is rather experimental than established, it may be considered preferable to adhere to known rules, however fit and reasonable a proposed change may appear.

Proceeding in subordination to legal rules of evidence, no less so in case of jettison than in privation of property by other casualties, the party claiming recompense for his loss should establish its value by the ordinary modes of proofs. Benecke, 294. The court cannnot look to the probable inconvenience or delays he may be subjected to in pursuing his remedy in that method; those are incidents to every demand put in suit, and I accordingly hold that the libellants must establish before the adjuster, by legal evidence, the value of the ship at the time the disaster occurred. He must determine that fact by due proofs. I can see no reason to vary

the rule on this inquiry, or to assume that the value at the place of departure of the vessel may easily be proved, whilst it must be impracticable to prove it at the place of her loss. Testimony, for aught that appears in this case, may as well be furnished tending to show the degree of depreciation of value, as to determine its state when the voyage commenced. The rule is, that a reasonable allowance shall be made for wear and tear (3 Kent, Comm. 242), and there would manifestly be great conveniency in possessing a criterion which should infallibly fix that amount; but without the support of notorious usage and custom to an uniform scale of depreciation of a vessel by performing the whole or any portion of her voyage, it must be sheer conjecture with the court to pronounce that the abatement of one-fifth or one-half, or any other aliquot of the value of the ship when sound, a reasonable measure of its worth at the time of loss. The method of ascertaining the value of the ship at her place of departure, and that which governs the same inquiry, at the period of her loss, should be alike.

On the argument, the counsel on both sides agree to accept the invoice prices and bills of lading as proof of the true value of the cargo, and the policy as evidence of the value of the freight; and that agreement renders it unnecessary to inquire what effect in law those documents would be entitled to upon the question of actual value of the cargo at the time and place of its shipment, or of the freight at the time of loss. The next consideration is, how freight is to be contributed for, and on what sum it is to contribute. In the authorities upon which the decision on the merits in this case is rendered for the libellants (2 Serg. & R. 229; Caze v. Reilly [Case No. 2,538]; [Columbian Ins. Co. v. Ashby] 13 Pet. [38 U. S.] 331), it is held that freight is to be brought into the account on general average, both as receiving and rendering compensation, because of the loss of the vessel, but those cases do not settle the ratio of allowance or contribution. In the United States circuit court the point was not debated by the bar or court, nor does it clearly appear that any average adjustment had been made in that cause. In the Pennsylvania case the jury found the freight payable per cask, but the case does not state what rate on the value was allowed in adjustment. The case in the supreme court is alike barren of facts on this point, and the attention of the court was not directed to the consideration of the special question made in this case. It appears, by the opinion of the court, that an auditor's report was made, but not being excepted to, no information is given of the basis upon which it was formed. In no one of those cases, or the thoroughly studied arguments made by the counsel in them, is it intimated that the freight is to receive contribution upon one valuation, and be contributory on a different one.

The libellants, by means of the abandonment to them, stand in place of the owners in this case, and it is admitted, that on portions of the cargo, freight has been received by them, and earned pro rata on others, and that they are bound to contribute on what is so saved towards the general loss. It is contended for them that they are first entitled to be allowed in contribution for the gross freight taken on board, and that they are only to contribute on the freight saved after deduction of the expense of earning it, whether the expenses are measured by a fixed ratio of deduction, as is the practice frequently adopted, or are ascertained by subtracting the wages and other expenditures in earning it as chargeable in favor of the ship against freight.

Legal writers, and the adjudged cases, constantly speak of the contribution in respect to freight as divisible in its character, the ship-owner to have contribution upon his gross freight on average adjustment, and to pay only upon the net amount saved him by the sacrifice to the common benefit. Abb. Shipp. 356, 357, and notes 1, 2; 1 Phil. Ins. c. 15, § 11; Benecke, Ins. 291; Id. 313; 1 Marsh. c. 13, § 7; Stevens, pt. 1, arts. 2, 4; Id. pt. 2, art. 3; Ann. Ins. 98; Hughes, 225, 226; Id. 283; Hall, 489, 492; 1 Smith, Merc. Law, 192. And such undoubtedly is the prevalent usage in respect to the contributory value of freight in cases of total loss. The principle recognised as the foundation of this doctrine is that every thing sacrificed for the common safety shall be contributed for by those benefited at its actual worth or value when lost, and that the contribution shall be drawn from every thing saved at its value at the same time. Maggrath v. Church, 1 Caines, 216. The court says the freight actually gained or earned in the voyage, and not what the vessel would have earned if she had gone the full voyage, ought to be the rule of contribution. When a jettison occurs, the freight for the voyage upon the goods thrown overboard is lost with them, and is provided for by general average at the rate of its full value. The freight on the residue of the cargo must accordingly be called on to contribute towards that loss at its value to the ship-owner, as one of the particulars benefited and saved by means of the jettison. What, then, in this relation to the subject, is that value as saved? There is great diversity and looseness of opinion and practice on this point, and it must be regarded yet an undetermined question of commercial law. The justness of the distinction set up between the amount to be paid and received on account of freight is not obvious, particularly as the freight lost, though paid for in full, need not be, and rarely if ever can be, fully earned at the time. The principle of the rule seemed to be aimed at is, to require the freight to be placed on the same footing with the ship and cargo, and have its interest in contribution at a common valuation, whether lost or saved.

The ship contributes upon her actual value, for loss or injury to herself or to the cargo, and in the present case is so contributed for; and it is not undeserving notice in this connection that wages and provisions, which are estimated in average adjustments as expenditures in earning freight saved and to be deducted from the valuation of freight, would perhaps be more appropriately referred to the ship, as necessities of her equipment and navigation, or of the expense of carrying her to the place of disaster. 2 Serg. & R. 229; Id. 237, notes. In that sense their value would be involved in the valuation of the vessel, and ought not to be reiterated and again provided for as a distinct interest in connection with freight. But adopting the usual mode of valuation, and regarding provisions and wages as expenditures in gaining freight and chargeable against that, the question yet recurs, whether the ship-owner is entitled to full freight on the cargo lost, and chargeable with less on that saved?

The case under consideration would mark the unequal operation of such rule as a general one. The owner here claims to be credited gross freight on part of the cargo, and to realize that amount in the adjustment, yet that he should be made chargeable in contribution upon the same, less the cost of earning it, say one-fifth. Thus he would be paid the expense of gaining the freight in a full allowance therefor, and receives compensation again, or what is equivalent, is relieved from contribution, in the way of deduction from the amount, before it is made contributory to the common loss. Such method of valuation, in effect, imparts to the ship-owner a double contribution on the same loss; first, in ranking him as creditor for gross freight, then abating from the sum (which is tantamount to adding it to the ship) the cost of earning it, when it becomes contributory. It is not easy to discern the equity which permits the subtraction of the cost of wages and provisions from freight, and does not allow them on the valuation of the ship. They are the indispensable conditions to her navigation; freight is not. Whatever her value may be at the place of loss, greater or less than at the place of her departure, the services of the crew (represented in wages and provisions) become ingredients of that value, in being the means of placing her there, and would be estimated by the owner as part of her cost price at that place, as the voyage is not necessarily one earning or seeking freight. The ship is the only losing party contributed to in this case, and, it seems to me, the suggestion is not without force, that in adjusting the average by allowing her full freight as parcel of her loss, and abstracting from the amount, when made contributory, her advantage on the average is augmented. She is relieved from contribution proportionably to the privilege thus given to freight when it is contributory.

If the rule were to be regarded as definite-ly settled, that between owners of the cargo, or in respect to the ship-owner, in compensation of the usual average losses on the vessel, the proportion of contribution laid upon freight shall be adjusted by deducting from the gross freight the cost of earning it; can that privilege be justly claimed, when the vessel seeks not recompense for a partial injury, merely retarding the voyage, which is performed after her reparation, and towards which she must make like contribution, but in compensation for her entire value as a total loss? The modern practice undeniably favors that distinction, and freight is relieved from contributing on general average upon its gross value; and a lesser one, supposed to have first satisfied the expenses of earning it, is assumed as the contributory valuation. 2 Phil. Ins. c. 15, § 11; Abb. Shipp. (Ed. 1829) 356; 1 Caines, 573; Humphreys v. Union Ins. Co. [Case No. 6,871]. Although this is accepted and acted upon by most commercial tribunals as a general doctrine, yet, as has already been shown, there is no uniformity in the rules governing the estimates of value. Sometimes it is an arbitrary abatement of one-fifth, one-third or one-half, and at others the proportion is worked out by valuing the charges incurred in gaining the freight. Without intending presumptuously to originate a plan of contribution in this respect, or to overlook or underate the prevailing practice, or the considerations upon which it is supported, I am more disposed to fall back upon the primitive usage, the great stock from which these diversities are offshoots. The decision now adopted will at least afford the opportunity to parties concerned in the question, to carry the subject before the national court of last resort, where a rule may be established and declared which will govern the American merchant navigation on this important topic.

In the Consulato de Mare, Bourdier's translation, c. 96 (2 Pardessus, Us et Coutumes de la Mer, quarto, p. 101, note 6), it is said, "In case of jettison, if the master receives freight for his whole cargo, the same shall be included in the general contribution;" although the ship, in the same ordinance, on such an average, is rated at one-half her value. And in chapter 98 it is expressly declared, that the freight saved shall contribute for its full value, the same as do the goods saved (2 Pardessus, 103, note 3); and the compiler points out the error of Bourdier in his translation of chapter 98, in this respect. The Laws of Oleron (8) declare, that losses by jettison are paid in full out of the vessel or freight, at the discretion of the master. Zouch, Append. 169, 170. So in various sea laws and ordinances collected by Molloy (B. 2, c. 6, § 12, pp. 12, 13), it appears that the contribution was laid upon the whole value of the freight. The ordinance of Philip II., of 1563, at Antwerp, so allots it, and the same usage had prevailed in the northern parts of Holland before 1300. La Recopila-

cion de Leyes de las Indias, in Spain, and the statutes of Genoa, lay on the ship a contribution both for the whole of her value and freight; and the ordinances of Koningsburgh and Hamburgh agree that the ship is to contribute to the same extent for the whole of her value and freight. Molloy refers to some instances amongst the old edicts in which the contribution appointed is less than on the whole value of the freight; but their general bearing and usage puts the gross value of the freight in contribution. Stevens quotes Van Weytsen (Traité des Avarie, 1563), who concludes his examination of the subject, by saying, "that in reason and justice they ought to carry in common contribution the whole value of the vessel, as well as the entire freight which the master receives for the voyage." (Stev. Av. 52; 1 Pardessus, Us et Coutumes de la Mer; Laws of Oleron, art. 8, p. 329, note 2; Id. art. 31, p. 344, note 5).

The considerations adverted to will lead me to place this decision on that basis, and to direct the freight to be charged on the adjustment at its full value at the place of disaster. The proceeds and part of the cargo being arrested in this port, the adjustment will then be made up conformably to the rules governing the subject here; preserving, however, a common basis of contribution in respect to freight, either to it, in satisfaction of its loss, or from it, contributing to the common loss. The decree adopted in this case will meet the other points also brought forward on these motions, and determine the terms of the adjustment to be carried into execution under the judgment of the court.

The court accepted, and ordered to be entered the following form of decree in the case:

This cause having been further heard in respect to the form of the order or decree to be rendered therein, and due consideration being had of the premises, it is considered and adjudged by the court, that the libellants recover against the proceeds of the cargo in the pleadings mentioned, a contributory part on general average in proportion to the value of the cargo saved (represented in whole or in part by the said proceeds) bore to the cargo on board paying freight. And it is further ordered and adjudged, that for the purpose of such contribution, the said ship be estimated at her value at her port of departure, when the voyage in the pleadings mentioned commenced: such value to be proved on the part of the libellants, subject to such deduction for wear and tear up to the time of her loss, as on the part of the claimants shall be proved to be reasonable; and also deducting all sums received by the libellants on sale of said ship, or any part of her tackle or apparel, after the stranding in the pleadings mentioned. And it is further ordered and adjudged, that the cargo laden on board be valued for the purpose of contribution, at the prices stated in the invoice and bills of lading thereof, or either, if both cannot be produced, deducting therefrom salvage and other necessary charges incurred in consequence of the wreck of said ship. And it is further ordered and adjudged, that the freight of the said ship be contributed for at its gross value, and that the freight saved after the wreck also contribute at its gross value, being the amount contributed for in the general average, deducting therefrom all necessary expenses incurred (if any) subsequent to the wreck aforesaid. And it is further ordered and adjudged, that it be referred to the clerk of this court (or, at the option of the parties, to an auditor, to be selected by their respective proctors) to adjust and state the average in this district, conformably to the directions of this decree, and that on such reference the proof produced on the hearing of the cause, and such other evidence as may be pertinent and competent, may be offered by either party, subject to all legal exceptions. And it is further ordered and decreed, that on the coming in and confirmation of the report of the clerk, (or auditor,) the libellants may take and enter a final order, that the claimants, Josiah Macy and others, in the pleadings named, and holding in their hands part of the proceeds aforesaid, pay over to the libellants respectively the sum so reported to be due them, or the rateable proportion thereof, according to their respective insurances, with interest thereon, from January 10, 1842, to the amount of the said funds in their hands, if necessary for that purpose. And it is further ordered and decreed, that the libellants recover their costs to be taxed, to be paid out of said proceeds, but no decree or process by virtue of the proceedings of foreign attachment is to be taken in personam against any party in the pleadings mentioned.