HENRY BURT, APPELLANT, *v.* THE BREWERS AND MALTSTERS' INSURANCE COMPANY, WILLIAMS-BURGH CITY INSURANCE COMPANY AND THE MECHANICS AND TRADERS' INSURANCE COMPANY, RESPONDENTS.

*Marine insurance — actual as distinguished from constructive loss — Abandonment — Written prevails over printed matter in contract — " Memorandum clause."*

In order to constitute an " actual" as distinguished from a " constructive " total loss of a ship, as those terms are used in marine insurance, it must have become a total wreck; the ship must have perished and have ceased to exist as a ship, although fragments of the wreck may remain and may reach the home port.

In case of an actual total loss, a notice of abandonment is of no effect; such notice is only necessary when something still exists which is capable of abandonment, and when the insured seeks to convert a partial into a constructive total loss.

Where the words " against actual total loss only " is written across the margin of a policy of marine insurance, such memorandum being in manuscript, will control such portion of the printed matter as may be in conflict with the limitation thereby imposed.

Where a ship insured against " actual total loss only " arrives in port with portions of her cargo, her main-sail uninjured, her standing rigging in place, her anchors, chains, masts and spars in place and uninjured, and with portions of her running rigging, *held*, that the insured could not recover from the underwriters under such policy, even though the ship was injured to more than three-fourths of her value.

APPEAL from a judgment in favor of the defendants, entered upon a nonsuit directed at the Circuit, and from an order denying a motion for a new trial made at the Special Term upon a case and exceptions.

*J. A. Hathway,* for the appellant.

*John C. Churchill,* for the respondents.

TALCOTT, J. :

This is an action on a policy of marine insurance, underwritten by the three companies named in the title. The plaintiff was nonsuited on the trial at the Oswego Circuit, and a motion for a new trial was afterwards denied at the Special Term, and this appeal is from the judgment and order denying a new trial.

The insurance was limited by a memorandum, in manuscript, written across the margin of the policy in the following words: "*Against actual total loss only.*" This restriction was ignored by the complaint, which proceeded upon the theory of a *constructive* total loss. It was, however, conceded by the justice before whom the cause was tried that the complaint might have been amended in this respect, and the nonsuit was placed upon the ground that the evidence failed to show an *actual* total loss. The restriction before mentioned was undoubtedly intended, and is to be construed as limiting the liability of the underwriters to an *actual* total loss, instead of a technical or constructive total loss, where the assured has the right of treating the loss as total, by means of an abandonment to the insurers. (*Murray* v. *Hatch,* 6 Mass., 465 ; *Buchanan* v. *Ocean Ins. Co.,* 6 Cow., 318.)

The meaning of the expression " *actual* " or " absolute " total loss, as distinguished from a technical or constructive total loss, is at this day well settled, and the distinction is very plainly stated in so elementary a work as Burrill's Law Dictionary, where it is said, " an *absolute* total loss takes place when the subject insured *wholly perishes,* or its recovery is rendered irretrievably hopeless. * * * A constructive total loss takes place when the subject insured is not wholly destroyed, but its destruction is rendered highly probable, and its recovery, though not hopeless, yet exceed-

ingly doubtful." (Burrill's Law Dict., " Total loss;" Arnold on Ins., 990 ; 3 Kent's Com., 318, 320, 321.) Chancellor KENT states the rule concerning constructive total loss as follows (p. 329): "It is understood to be a fixed rule that if the ship be so injured by perils as to require repairs to the extent of more than half her value at the time of the loss, the insured may abandon, for if ship or cargo be damaged so as to diminish their value above half, they are said to be constructively lost."

An *absolute* total loss is one which entitles the assured to claim of the underwriter the whole amount of his subscription, without giving notice of abandonment. A *constructive* total loss is one which entitles him to make such claim on condition of giving such notice.

When the ship, in the course of her voyage, and by the agency of the perils insured against, becomes an absolute wreck, when she has been broken in pieces and dismembered so that her planks and apparel are scattered on the sea, this is a case of absolute total loss on ship, though the whole or greater part of the fragments may reach the shore as wreck. In such case, it is quite clear that the ship, *as a ship*, is totally destroyed, the ship has perished, only the wreck remains. (2 Arnold on Ins., 1013.) And in considering the question whether a vessel can actually be a total loss which reaches her port of destination, though a wreck, Mr. Arnold says : " If the ship be wrecked in pieces off her home port, *so that nothing but her fragments* come to hand, there can be no doubt but the assured may recover for a total loss without notice of abandonment, * * * but if her planks still hold together, so that she retain the shape of a ship, though wholly irreparable, so as to take the sea again, except at a cost greater than her value when repaired, the safer practice would be to give notice of abandonment." Which notice, in the case of a ship insured, generally and without restriction to " actual total loss," would convert what would otherwise be a partial loss into a technical or constructive total loss. But where the liability of the underwriter is expressly restricted to an absolute or actual total loss, there must exist such a state of things as that the subject of insurance is wholly destroyed as that thing, in specie, which was insured, or, at all events, there must be left no *spes recuperandi.*

As was said by Sewall, J., in *Murray* v. *Hatch*, before cited, "whether the injury sustained, and the expenses of salvage, rendered the voyage of no value, and not worth pursuing, is not a question to be considered where the policy is restricted to the case of a total loss. That case is only proved by showing the destruction of the thing specifically. * * * But if afloat, and if she was capable of being repaired at any expense, it was not a total loss within the meaning and intent of the policy relied on in this case."

This question has generally arisen on what is termed, in marine insurance, the "memorandum clause," in which the articles therein specified are warranted free from average, unless general, the meaning of which is, that there can be no partial loss, and that there must be an actual destruction of the article specified in the memorandum, "and not merely such a technical loss as would authorize an abandonment." (Kent, C. J., in *Mc Grath* v. *Church*, 1 Caines Rep., 196, op., 212; and see, also, *Wadsworth* v. *The Pacific Ins. Co.*, 4 Wend., 33.) And in *Le Roy* v. *Gouverneur* (1 Johns. Cas., 226) the court says: The English construction of the words "free from average unless general" protects the underwriters from all losses except an actual, as distinguished from a technical total loss.

In *De Peyster* v. *The Sun Mut. Ins. Co.* (19 N. Y., 272), Grover, J., delivering the opinion of the court, says: "The law in this State is settled that there can be no recovery in case of loss of memorandum articles when any portion thereof arrives in specie at the port of destination, although possessing no value there." And again, in the same case: "While any portions of such articles remain in specie, capable of being transported to the terminus of the voyage, and within the control of the assured, he cannot recover for a destruction of a portion of the property, or for the loss of value, however serious such loss may be." (See Lee's Laws of Shipping and Marine Ins., 459, 461; Smith's Mercantile Law, 445; Phillipps on Ins., 233, §§ 1485, 1487; 2 Parsons on Marine Ins., 68–91; *Globe Ins. Co.* v. *Sherlock*, 25 Ohio St., 50.)

Thus it appears that the legal effect of the policy in suit was to restrict the liability of the underwriters to an actual total loss,

which can only be construed to refer to the well settled defini-
tion of an absolute total loss, by a destruction of the thing in
specie, and to guard against any liability to arise from a partial
loss, where the expense of repairs would exceed the value of the
vessel when repaired, or when, as the expert witnesses in this case,
in effect, say, " the vessel was not worth repairing." And probably
the reason for this restriction is to be found in the fact that the
vessel insured was rated as B. 2, which shows that she was esti-
mated as an old and inferior vessel, likely, if damaged at all so
that repairs became necessary, to be liable to abandonment, as
for a total loss, under the American rule, that a constructive total
loss may arise where the repairs will exceed one-half the value of
the vessel when the loss occurred. The limitation of the risk of
the underwriters being confined to an *actual* total loss, was evi-
dently intended to exclude the idea of repairs.

The words restricting the liability being in manuscript, control
such portions of the printed matter, if any, as seem to be in con-
flict with this limitation. (*Leeds* v. *Mechanics' Ins. Co.*, 8 N. Y.,
351; 22 id., 444.)

In this case, the vessel insured, in fact, reached her home port
with portions of her cargo, her main-sail uninjured, her standing
rigging in place, her anchors, chains, masts and spars in place and
uninjured, and portions of her running rigging. It does not
appear that any of her timbers were broken, though some were
displaced, and some five or six planks were gone. It is not neces-
sary to enumerate in detail the damages which the ship was shown
to have sustained. If the views herein before expressed are cor-
rect, it is evident that there was not such a total destruction of the
vessel as, by the settled law of marine insurance, as we understand
it, are requisite to constitute an "*actual total loss.*" And there
being substantially no dispute as to the condition of the vessel,
nor but that she existed in specie at her home port, and though,
perchance, injured to more than three-fourths of her value, as
claimed in the complaint, still there was no question to be submit-
ted to the jury.

If we have construed correctly the various decisions and the
language of elementary writers on the subject, the evidence of
notice of abandonment was immaterial, and was properly rejected.

Abandonment is only necessary where the underwriter is liable for a partial loss, where there is something to abandon; but where the insurance is against actual total loss only, an abandonment is wholly without effect.

It is supposed by the appellant that the case of *Wallerstein* v. *The Columbian Insurance Company* (44 N. Y., 204) has laid down a different rule as regards memorandum articles from that which we have herein before relied on as the settled rule of law on the subject. We do not so interpret that case. There the insurance was upon wool and coffee, free from average unless general.

The coffee became wholly lost to the owner, that is, its entire value became lost, though the coffee remained in specie. But no recovery was allowed for the wool, though its value had been $3,961, and sold after the damage at $1,100.02 in excess of the auctioneer's charges, and this balance was subject to a deduction of sixty per cent for salvage, leaving only $440, or about one-ninth of the value. It is true, it is said in that case, that absolute physical destruction is not necessary to constitute a total loss, but only a destruction of the thing insured, as the thing it was when insured. The coffee, though the berry still existed, was no longer coffee in the mercantile sense of the word, and could not be restored by any amount of expenditure. We think, therefore, the nonsuit was correct, and should be affirmed.

Judgment and order refusing a new trial affirmed.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Ordered accordingly.