<div style="text-align: right">NEW-YORK,<br>Nov. 1810.<br><br>WATSON<br>v.<br>MAR. INS. Co.</div>

New trial granted.

---

## WATSON against THE MARINE INSURANCE. COMPANY.

THIS was a policy of insurance on the ship *Two Marys*, " at and from *New-York*, until she should be safely arrived at *Nantz*." At the foot of the policy, which was dated *December* 10th, 1807, there was the following written clause : " Warranted by the assured *American* property, (proof whereof to be required here only,) and not to abandon in case of capture or detention, until six months after advice thereof is received at this office, or until after condemnation; also free from seizure or detention in port, and not to abandon in consequence of being turned away, for having been carried into any *British* port, or going into any *British*

<div style="text-align: right">A vessel was insured from New-York, until she safely arrived at Nantz. The policy contained the following clause: " Warranted not to abandon in case of capture or detention, until six months after advice thereof, or until condemnation; also, *free from seizure or detention in port,* and not to abandon in consequence of being turned away, or for having been carried into any *British* " port,"<br><br>&c.<br>The ship sailed from New-York the 24th December, 1808, and during the voyage was visited by two British cruisers, who endorsed her register, forbidding her to enter any port of France, &c.<br>Having met with a gale of wind, and being near Belle-Isle, she went there</div>

NEW-YORK,
Nov. 1810.

WATSON
v.
MAR. INS. Co.

for a pilot, and was chased by a British cruiser, under the lee of the island; and having taken in a pilot, she lay to about an hour, about a league from shore, and distant about 30 miles from Nantz, the fog being so thick, that the ship could not safely proceed; and while in this situation, about a league and a half from the principal fort, and nearly in reach of cannon shot, the ship was taken possession of by a French armed boat, and carried in under the guns of the fort, and there claimed as a prize; and was afterwards condemned, under the Milan decree of the 17th December, 1808, for having been visited by a British cruiser.

port, from any other cause. If turned away, leave given to go to another port not blockaded." The ship was valued at 10,000 dollars.

The cause was tried at the *June* sittings, 1810, before Mr. Justice *Yates*. The preliminary proofs were admitted; and a verdict was taken for the plaintiff, by consent, for 15,000 dollars, subject to the opinion of the court, on the following case, with liberty to either party to turn the same into a special verdict.

The ship sailed from *New-York* the 25th *December*, 1807. On the 10th *January*, 1808, she was visited by two *British* ships of war, who endorsed her register, forbidding her to proceed to any port in *France*, or under its dependencies. After meeting with a heavy gale of wind, and cutting away some spars, she made for *Belle-Isle*, in order to take in a pilot, and was again boarded by an *English* schooner, but not showing her papers, the ship was permitted to proceed, and arrived off the shore of *Bell-Isle*, the 29th *January*, and took in a pilot, being about a league and a half from the principal fort. The ship being about 30 miles from *Nantz*, and the weather thick, so that she could not proceed, she lay to under the protection of the grand fort, for fear of being boarded again by *English* cruisers, having been chased by them, and two cruisers were laying to, off each end of the island. The ship lay to, for about an hour, almost within reach of

It was held that this was not a seizure or detention in port, within the meaning of the clause in the policy, and that the insured were entitled to recover for a total loss, and also for the expenses of the captain, in endeavouring to obtain the release and restoration of the ship; which included *wages* of the captain, from the time he left the ship, until his arrival at *New-York;* his passage money, with commissions and interest; but the insurer on the ship is not liable for any expense specifically and exclusively for the benefit of the cargo, nor for any sum *per diem,* agreed by the owner to be allowed the captain while in port.

The insured may recover above the sum insured, for the expenses of labour and travel for the defence and recovery of the property insured; and where expenses are incurred for the recovery of the ship, the insured may recover the whole amount against the insurer on the ship, though the freight and cargo should be incidentally benefitted, and ought to contribute in proportion; leaving the insurer on the ship to recover, if he can, of the owners or insurers of freight and cargo, for their contributory shares.

cannon shot, when she was boarded by an armed boat from the port of *Belle-Isle*, the officer of which being informed that the ship had been visited by the *English*, took command of the ship, and carried her within pistol shot of the fort, and there anchored her. The captain was then told by the commandant, of the *Milan* decree of the 17th *December*, 1807, and that the ship was good prize. The captain was prevented from returning to the ship, which was dismantled by the *French*.

The captain expended 6,348 livres, in travelling from one place to another, about the ship's business, and soliciting her restoration; which expense was necessarily incurred.

By permission of the council of prizes at *Paris*, the cargo was delivered to the consignees, upon their giving security to abide the event of the trial.

A part of the account of expenses, being the 12th charge of 705 livres, was incurred by the captain's going to *Belle-Isle*, to attend to the delivery of the cargo; but all the other charges in the account were for expenses incurred about the business of the ship only, and were, in the belief of the captain, who was a witness at the trial, necessary for the preservation of the ship, and in order to obtain her release. The vessel was condemned the 15th *December*, 1808, under the *Milan* decree, for having been visited by *English* cruisers; and the decree was executed on the 26th *March* following, until which time the master attended to the preservation of the ship, under the direction of the council of prizes. The captain's wages for the voyage were forty dollars a month; and by agreement with the owner, he was to be allowed one dollar for each day he remained in port.

The account of the *expenses* of the captain, amounting to 2,469 dollars, exhibited by the plaintiff, included the expenses of travelling to and from *Paris*, to *Nantz*, *L'Orient* and *Belle-Isle*; boarding and lodging at the different places, *wages* of the captain from the 26th *March*,

NEW-YORK, 1809, to the 3d *August*, 1809, when he arrived in *New-*
Nov. 1810. *York*; 526 dollars, being the amount of his allowance of
WATSON one dollar a day, from 30th *January*, 1808, to 9th *July*,
v. 1809; 200 dollars paid for his passage back to *New-*
MAR. INS. Co. *York*, 1,105 livres left in the hands of the consignees, to
prosecute an appeal to the council of state, and five *per*
*cent.* commissions on the amount of these expenditures;
with interest.

It was agreed, that if the court should be of opinion
that the plaintiff was entitled to recover, a judgment
was to be entered for the amount of the verdict, deducting
any *items* in the account of the captain's expenses,
which the court should be of opinion the plaintiff was
not entitled to recover in this action.

This cause was argued on paper, by consent.

*Wells*, for the plaintiff.

*Colden*, for the defendants.

The points raised by the counsel for the defendants,
were :

1. That the vessel was seized in port, within the true
intent and meaning of the policy.

2. That the stopping at *Belle-Isle* was a deviation.

3. That the amount of the account of expenses is in-
correct ; most of them are improperly charged against
the insurers on the ship, being the subject of general
average, and the freight and cargo ought to bear their
proportions.

KENT, Ch. J. delivered the opinion of the court.
The counsel for the defendants object to the recovery in
this case, and contend,

1. That the vessel was seized in port within the true
intent and meaning of the policy.

2. That stopping at *Belle-Isle* was a deviation.

3. That many of the *items* contained in the account annexed to the case, were not chargeable to the insurer upon the vessel, and that they were at least the subject of a general average, or chargeable upon the ship, freight and cargo, in due proportions.

The two first objections are without any plausible force. The ship was captured by a *French* armed boat, off the island of *Belle-Isle*, and thirty miles from the port of *Nantz*. The captain states that he went to *Belle-Isle* for a pilot, and was chased under the *lee* of that island, by two *English* vessels; and that having taken a pilot on board, he lay to for an hour, about a league from shore, as the fog was so thick that he could not proceed. In this situation he was taken; and there does not appear to be any well-founded pretence for alleging that he was then *in port*, or that a delay of one hour was unnecessary, or amounted to a deviation.

With respect to some of the *items* in the account, the objection is well taken. The 12th charge of 705 livres, arose expressly on account of the cargo, and was not chargeable to the ship. That *item* ought, therefore, to be deducted. With respect to the rest of the charges, they may, perhaps, be considered as incurred equally for the benefit of the ship and freight; and the eleven first *items* arose before the captain ceased to have charge of the cargo, and were therefore incurred in labouring for the benefit of the cargo, as well as for the ship and freight. All these subjects of insurance were equally involved in the peril, and it would seem to be just that the ship and freight should bear these expenses in due proportions throughout; and that the cargo should bear its proportion of the first part of the expenses, until the captain ceased to have any further concern with it. But this nice and difficult question of apportionment need not be discussed in this case, for the captain declares generally, that these expenses were incurred about the business of the ship. The labour and expense were in-

curred for the recovery of the ship, notwithstanding that other subjects might incidentally enjoy the result of the effort. The plaintiff was obliged to pay and bear the charges, as owner of the ship; and according to the decision in *Maggrath & Higgins* v. *Church*, (1 *Caines*, 215.) he is entitled, even if a case for contribution existed, to recover the whole of it, in the first instance, of the insurer upon the ship, and to leave it to him to call upon the owners or insurers of the cargo and freight, for their contributory shares. The decision on this point was afterwards considered by the court, in *Vandenheuvel* v. *The United Insurance Company*, (1 *Johns. Rep.* 412.) as a settled rule; and *Pothier*, in his *Traité du Contrat d'Assurance*, (No. 52. and 164.) recognises it as an established doctrine. There is no doubt that the insurer is liable beyond the sum insured, for the expenses of " labour and travel for, in, and about, the defence and recovery of the property insured ;" (1 *Caines*, 284. 450.) and the captain proves in this case, that the expenditures, subject to the above exceptions, were necessarily incurred about the business of the ship, and of her only. The principal objection is to the last charge of 526 dollars, for the captain's port pay. Was this an expense incurred in travelling or labouring for the recovery of the ship? It was proved, that this was " an allowance by agreement with the plaintiff, of one dollar per day, for each day he remained in port." This is an *extra* allowance for discharging the cargo, and procuring freight, and attending to the interests of the owner, after the vessel has arrived in port; and it does not seem to come within the meaning of the allowance granted by the policy. The plaintiff might, by agreement, have allowed the captain 20 dollars a day, instead of 1 dollar, while he was in port; and ought the defendants to be responsible, beyond their subscription, for such extraordinary contracts? The clause in the policy ought to be confined to expenditures arising directly from a prosecution of the express objects for which it

was introduced. The court are not informed by the case of any established rule or usage on this subject; and standing as the charge does, upon the naked fact of an allowance by agreement, without the particulars of that agreement being given, it ought not to form part of the recovery. The last charge and the 12th charge being deducted from the verdict, the plaintiff is entitled to judgment for the residue.