POTTER (PIKE v.). See Case No. 11,162.

---

## Case No. 11,336.

POTTER v. PROVIDENCE WASHINGTON INS. CO.

[4 Mason, 298.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1826.

MARINE INSURANCE—GENERAL AVERAGE—CUTTING AWAY MASTS AND RIGGING—OWNERSHIP OF VESSEL AND CARGO.

1. A policy was underwritten on a vessel for twelve months. In the course of her voyages,

---

[1] [Reported by William P. Mason, Esq.]

during this period, she sailed from Providence bound to New Orleans, with a cargo on board belonging to the owner of the ship; and encountered a gale, and was compelled to cut away her masts and rigging, and to return to New York for repairs, where it was found that the repairs would cost more than half her value. The cargo was taken out and sold by the owner, who had insured the same. The claim was now for a total loss of the vessel, she having been abandoned to the underwriters. In adjusting the loss, it was held, that the cutting away of the masts and rigging was a general average, to be borne by the ship and cargo in the same manner, as if they belonged to different owners.

[Cited in Griswold v. Union Mut. Ins. Co., Case No. 5,840.]

[Cited in brief in Scudder v. Bradford, 14 Pick. 14.]

2. In such a case, if the owners of the ship and cargo are different, the owner of the ship may recover the whole amount of his loss, without any deduction of the general average due on the cargo. But where the ship owner is also owner of the cargo, the amount due from the cargo may be deducted from the total loss on the ship, by the underwriter.

[Cited in Force v. Providence Washington Ins. Co., 35 Fed. 768.]

[Cited in brief in Forbes v. Manufacturers' Ins. Co., 1 Gray, 372. Cited in Greely v. Tremont Ins. Co., 9 Cush. 419; Matheson v. Equitable Ins. Co., 118 Mass. 212.]

Assumpsit on a policy of insurance, dated 10 Sept., 1825, as follows, "$5,000 on ship Jefferson and appurtenances for and during the term of twelve months in port and at sea, and at all times and places during that period, beginning the adventure on the 1st of September at 12 o'clock at noon." Premium, 8 per cent. The loss was averred in the declaration to be by perils of the seas. Plea, the general issue. At the trial, the facts were not disputed. It appeared that the ship sailed from Providence in August, on a voyage to New Orleans, with a cargo on board belonging to the plaintiff, who was also owner of the ship. On her passage she encountered a severe hurricane, and was so much wrecked and injured, that she was obliged to put into New York for repairs. On a survey there, it was found that she was injured more than her whole value; and the plaintiff [John D. Potter] accordingly abandoned her to the defendants. The cargo was taken out and sold by the plaintiff, who had insured the same, and made a claim on the underwriters, but no loss had been paid by the latter. During the hurricane, the masts and rigging, &c. were voluntarily cut away by the master to avoid foundering. The only questions made were, first, whether the cutting away the masts and rigging was a general average or not, to be borne by ship and cargo, for no freight was earned; secondly, if so, whether the defendants had a right to deduct from the plaintiff's demand, the amount which was due from him as owner of the cargo; or whether he was entitled to recover the total loss, and leave the defendants to their remedy against the underwriters on the cargo for the general average.

A verdict was taken for the plaintiff, subject to the opinion of the court on both points; and it was agreed that the adjustment of the average and other legal deductions should be made by a commissioner according to the opinion of the court.

Mr. Searle, for plaintiff, cited 1 Caines, 196, 215; 1 Johns. 412; 7 Johns. 57; 6 Mass. 318.

Mr. Bridgham, for defendants, cited Phil. Ins. 333, 353, 459; 7 Johns. 412; 1 Maule & S. 318; 9 East, 72; 4 Bin. 502.

STORY, Circuit Justice. There is no question in this case, but that there has been a total loss of the ship, for which the underwriters are liable. The injuries sustained by the hurricane were so great, that upon the ship's arrival in the port of New York, it was found that it would cost more to repair her, than she would be worth after she was repaired. An abandonment, therefore, was rightfully and seasonably made. The question now in dispute, arises from another circumstance. During the storm, the masts and rigging were voluntarily cut away for the benefit of all concerned, and this sacrifice, beyond all doubt, constitutes, in ordinary cases, a claim for general average upon ship, cargo, and freight. The owner of the ship is also owner of the cargo. The voyage being defeated, no freight was earned. The cargo was insured by another policy. No expenses were in fact incurred for repairs on account of the general average, and no loss has been paid by the underwriters of the cargo as the contributory share of the cargo to the average. Upon this posture of the facts, the defendants contend, first, that the plaintiff being owner of both ship and cargo, they are entitled to receive from him the amount of the contributory share of the cargo to this loss. Secondly, that this amount may and ought to be deducted from the sum received in the present suit.

In respect to the first point, it does not appear to me, that there is any reasonable ground for disallowing the general average. This case must be decided in the same manner as if a stranger were the owner of the cargo. The cargo has been preserved by a voluntary sacrifice, and the ship owner, if there had been no abandonment, would be clearly entitled to demand from the owner of the cargo, a contribution to the general average. It does not appear to me that the abandonment makes any difference in the case. A total loss of the ship, that is, total in construction of law, has arisen; but the cargo has been saved. Where indeed a partial loss or damage to the ship occurs in the course of a voyage, and afterwards, in the same voyage, a total loss of the ship, there the former is absorbed in the latter, unless expenses have, in the intermediate time, been incurred to repair it, and in that event, those expenses are payable by the underwriters in addition to the total loss. Jumel v. Marine Ins. Co., 7 Johns. 412, 424, note C.

But here, though a total loss has occurred, the previous sacrifice constituted not a loss solely to be borne by the ship owner, but a contributory loss to be borne by all the property at hazard. The ship owner had a right to say, I subsequently lost my vessel, but your property was saved at my expense, and you must contribute to relieve me from this burthen. If the ship owner may say so, it appears to me, that the same claim belongs to the underwriters after the abandonment, for they succeeded to the rights of the assured.

Then as to the second point. If this were a suit to recover the amount of the loss of the masts and rigging &c. sacrificed for the common benefit, I am of opinion, that the ship owner would be entitled to recover the whole amount of the loss, without first seeking to recover against the owners of the cargo their contributory share; and the underwriters must be left to recover their recompense over. The ship owner is entitled to receive his full loss by a peril incurred against, without troubling himself with any remedies over against third persons. I follow, in this respect, the doctrine in Maggrath v. Church, 1 Caines, 196, and the other cases in New York, which have succeeded it (Vandenheuvel v. United Ins. Co., 1 Johns. 412; Watson v. Marine Ins. Co., 7 Johns. 57), in preference to that of Lapsley v. United States Ins. Co., 4 Bin. 502. I speak here of a case where the ship and cargo are owned by different persons. Where they are owned by the same person, a different rule may well apply. There the same hand that loses, pays. As between himself and the underwriters on the ship, his real loss is only the contributory share of the ship to the loss. The other losses are borne by him as owner of freight and cargo, for which he directly is liable. If he actually repairs the loss, the expenses paid must be deemed expenses paid as well in his character of owner of the cargo, as of the ship. To declare that he would in such a case be entitled to recover the whole expenses against the underwriters, would be to decide, that he might recover a sum, which he was bound to pay on his own account; to recover that which he was bound immediately to pay back to the underwriters. The law does not justify such a doctrine. And the authority of Jumel v. Marine Ins. Co., 7 Johns. 412, is directly opposed to it; and Williams v. London Assur. Co., 1 Maule & S. 321, goes with the latter. In principle, there ought to be no difference, whether the owner of the ship has repaired the loss or not. In either case, he can recover only the amount of his loss. This loss must be in either case no more than what he has incurred as ship owner. In contemplation of law, as owner of freight and cargo, he is indemnified as to their portions of the loss.

My judgment accordingly is, that in this case there must be a deduction from the verdict of the amount of the contributory share of the cargo towards the loss, for to this extent the ship owner has actually in his own hands an indemnity. The case is precisely the same as if he had received from a third person, who was the owner of the cargo, the amount of his contribution. Pro tanto, it would be an indemnity going to diminish the total loss.

The district judge concurs in this opinion, and there must be judgment accordingly.