Shaw, C. J.
This is an action of assumpsit on a policy of insurance on the brig Napoleon, whereby she was insured to the plaintiffs for one year, from the 8th of November, 1845, for $>2,250, being one half of the value.
On a voyage within the time, from Havana to Cardenas, in Cuba, in ballast and without cargo, on the expectation, caused by a letter, of receiving a freight there, she encountered *418 a severe gale, in which she lost her maintopsail, and was thrown on her beam ends, in consequence of which it became necessary to cut away her masts, which, with the rigging attached thereto, were lost, and caused other damage to the vessel. She got into Key West by the aid of a wrecker, where, after a survey, she was sold.
The plaintiffs claim for a constructive total loss, on the ground that the vessel was so much damaged by the perils insured against, that it would cost more than half her value to repair her; and, therefore, according to the rule prevailing in Boston, the assured had a right to abandon, and recover for a total loss.
It is argued that, if all the expenses of repairing the vessel were combined, including those occasioned by cutting away the masts and the consequent damage, the sum, after deducting one third new for old, would exceed one half her value, and constitute a constructive total loss; but, without including those repairs, the cost would not amount to enough to constitute a constructive total loss.
It is contended, on the part of the defendants, that all the damages occasioned by the cutting away the masts are in their nature general average charges, and are not to be included in deciding the question, whether it would cost more than half the value, deducting one third, according to the rule, to repair the vessel and make her seaworthy; and, therefore, that it is not a constructive total loss within the rule.
1. The first question is, whether the loss occasioned by cutting away the masts, under the circumstances, is to be considered general average charges; and the doubt stated on the part of the plaintiffs arises from the fact found, that the vessel had no cargo on board; and, therefore, it is contended, that there was neither cargo nor freight to contribute, and the whole loss must be borne by the vessel, and, consequently, that it was not general average.
But the court are of opinion, that the circumstance that the vessel was in ballast, when the cutting away the masts occurred, makes no difference.
The masts were voluntarily cut away; and this is the *419 distinguishing characteristic of general average loss. The imminence of the danger makes no difference; if a cable is voluntarily cut, and the vessel is afterwards saved, it is not less a general average charge, that there was reasonable, or even strong ground to believe, that, without such cutting, the cable would have soon parted. It was a voluntary act at the time it was done, and this gives it its character. Reynolds v. The Ocean Insurance Co. 22 Pick. 191.
By the law of insurance, a general average loss upon the subject insured is to be paid in full by the insurer, without deduction, and without reference to the question, whether the vessel, if it happen to be a vessel, can or cannot be repaired, and at what cost, in reference to her value. It is a loss already incurred, and become fixed, before the assured is called on to determine what would be the cost of repairs, in reference to the value of the vessel; or whether, under his contract, he has a right to abandon, as for a constructive total loss, in case the cost, after deduction of the usual one third new for old, will exceed one half the value. A general average loss is different in its nature, in its cause, and in the mode of adjustment and recovery, from that of a partial loss. That the question depends upon the nature of the loss, and not on the fact that there are other contributory interests, as cargo and freight, seems settled by authorities. Potter v. The Ocean Insurance Co. 3 Sumner, 27; Pezant v. National Insurance Co. 15 Wend. 453; Potter v. Washington Insurance Co. 4 Mason, 298.
The underwriter is liable directly to the assured for a loss, in its nature a general average loss; that is, resulting from a voluntary sacrifice or its necessary incidental consequences, without waiting to collect contributory shares from other parties, unless, indeed, the same person be owner of both vessel and cargo. Maggrath v. Church, 1 Caines, 196; Watson v Mar. Insurance Co. 7 Johns. 57.
But the rule does not apply where the assured is owner of the vessel and cargo. Then, as owner of the cargo, being bound to contribute, he is deemed to have the contribution in his own hands, and, therefore, is clearly pro tanto indemnified. *420 and cannot collect of the underwriter a sum of money, to be recovered back by the underwriter of himself.
These cases confirm the principle, that a loss by voluntary sacrifice is different in its nature from a loss by the other causes acting on the subject of insurance, and gives a different right to the assured. And the question does not depend on the fact, whether there are, in any ease, separate interests to contribute, but the result is the same as between the insurer on the vessel and the assured, as if the assured were owner of the vessel and cargo, and entitled to the freight.
2. Assuming that a loss occasioned by a voluntary sacrifice of part of the vessel is in its nature a general average, we are of opinion that such loss is not to be added to the costs of repairs, in order to show that such costs would exceed one half of the value of the vessel, so as to constitute a constructive total loss.
This rule of regarding a vessel as so much deteriorated by losses, within the perils insured, that she cannot be repaired but at a cost exceeding half her value, is generally adopted in American jurisprudence, though it is believed that it does not prevail in England. It is said by Mr. Chancellor Kent to have come from the French law, and that it is found in the treatise known as Le Guidon. 3 Kent’s Com. 329.
This constructive total loss occurs, and the right to abandon arises, when the ship is so far damaged as to become unnavigable without great and expensive repairs, and the rule in this country, for the sake of certainty, is fixed at one half her value. This has been modified in the Boston policies, by a provision, that the insured shall not have a right to abandon the vessel for the amount of damage merely, unless the amount which the insurers would be liable to pay, under an adjustment, as of a partial loss, shall exceed half the value of the vessel insured.
This right is plainly founded on the principle that, where the risk and expense of restoring the vessel are great, and disproportionate to the expected benefit and objects to be obtained by a repair of the vessel, the assured may, by notice of abandonment, and surrender of the vessel to the under *421 writers, claim at once a total loss, according to his contract. The property is regarded as substantially gone from the power and control of the owner, to all useful and beneficial purposes.
In estimating this expense, to determine whether the assured has thus a right to abandon and demand a total loss, the court are of opinion, as well from the principle on which the right is founded as from the course of judicial decisions in this commonwealth, that a general average loss is not to be added to the cost of repairs. Orrok v. Commonwealth Insurance Co. 21 Pick. 456; Hall v. Ocean Insurance Co. 21 Pick. 472; Reynolds v. Ocean Insurance Co. 22 Pick. 191.
It has been supposed that the case of Sewall v. The United States Insurance Co. 11 Pick. 90, is an authority for a contrary rule. But, when understood, we think it is not so.
The vessel, in that case, had actually filled and sunk in deep water, off Chatham, and was under water at the time of the abandonment. She had a valuable cargo on board, not destroyed by being under water. The question was, whether it would cost more than half her value to take her from the place where she was, and bring her to a suitable place, and make the necessary repairs. She was raised, and towed to Boston. The whole cost of this proceeding was apportioned on the vessel and cargo, according to their respective values. This was inadvertently called general average, because there was this apportionment. But it wanted the character of general average in this, that no voluntary sacrifice was made or expense incurred, by the owner of one of the subjects at risk, for the common benefit of both, by design and purpose. It was the cost of taking the vessel from the place where she was sunk by the direct force of a peril of the sea, and bringing her to a place of safety ; and this expense was called an average, because it was shared with the cargo, saved by the same means. And in the opinion the court says, “ the sum paid for removing the vessel to a safe place, where she could be repaired, was not technically a general average.” This was clearly so. The actual loss had been incurred by the peril of the sea, and not by the wifi or act of man; and the proper *422 question was, whether, taking the vessel as she lay, she was worth taking up and bringing in to be repaired, and could this be done for half her value ?
The costs of bringing a vessel to a port of refuge for repairs, are often spoken of, in works and cases of insurance, as general average charges ; and in many cases they are properly so called, because they are incurred in consequence of the deliberate determination of the master, after damage sustained by peril of the sea, to change his ■ course, and put into a port, other than that of his destination, for repairs, by means of which these expenses are voluntarily incurred, for the benefit of all concerned. But such was not the case of the Marshal Ney, on which the decision of Sewall v. The United States Insurance Co. was founded. No expense was incurred in pursuance of any determination or act of the master, in the management of the voyage. That case, therefore, affords no authority for the position that general average charges are to be included, in making up the loss of fifty per cent, to constitute a constructive total loss.
3. Upon the hypothetical question, the court are of opinion that, if the expenses of repairs, including' general average, would exceed the value of the vessel, the plaintiffs would not be entitled to recover, without regard to any discrimination between damages constituting a partial loss and general average loss, and such estimated cost would not constitute an actual total loss. The ship remained in specie, under the control of the assured, and unless there was in fact a total loss, independent of the sale by the master, such sale did not make it so.