# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF SUFFOLK, NOVEMBER TERM 185,
## AT BOSTON.

———

PRESENT :

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,  ⎫
Hon. BENJAMIN F. THOMAS, ⎬ Justices.
Hon. PLINY MERRICK,      ⎭

———

## Daniel W. Lord vs. Neptune Insurance Company.

Insurers on the freight of a ship for a voyage are not liable for a total loss, where ther has been no total loss of the ship, and the goods could have arrived *in specie* at the po t of destination; although the ship has been obliged by a peril insured against to put back to her port of departure, and the goods, after being damaged by that peril to the extent of more than half their value, or to the extent of goods yielding more than half the freight, have been sold there according to the interests of all parties except the insurers on freight.

If a ship is obliged by perils of the sea to put back to her port of departure, and her cargo is there sold by the master for the interest of all parties except the insurers on freight, the shipowner is not entitled to freight; and, if he defends, on a claim of freight, a suit brought against him by the owner of the cargo for the proceeds of such sale, cannot recover from the underwriters on freight any part of the expenses of such defence.

Insurers on freight are liable for the freight of goods jettisoned, without waiting for the adjustment of the general average; although the policy provides that any loss "shall be paid within sixty days after proof and adjustment thereof."

Lord *v.* Neptune Insurance Company.

Under a policy which exempts the insurers from liability for any partial loss on certain goods perishable in their nature, unless it amount to seven per cent. and happen by stranding; and for partial loss on other goods or on the vessel or freight, unless it amount to five per cent.; the insurers are liable for a partial loss exceeding five per cent. on the freight of a cargo consisting of such perishable articles and of other goods, although not occasioned by stranding.

Assumpsit on a policy of insurance upon freight. The case appears in the opinion. It was first argued at March term 1852, and an opinion delivered at March term 1854. The plaintiff then moved for a further argument, which was granted, and had at November term 1854.

*R. Choate & E. A. Dana,* for the plaintiff, cited some of the cases referred to in the opinion, and *Everth* v. *Smith,* 2 M. & S. 284; *Hurtin* v. *Union Ins. Co.* 1 Wash. C. C. 530; *Simonds* v. *Union Ins. Co.* 1 Wash. C. C. 443; *Miston* v. *Lord,* 1 Blatchf. C. C. 357; *American Ins. Co.* v. *Center,* 7 Cow. 583, and 4 Wend. 45; *Bryan* v. *New York Ins. Co.* 25 Wend. 617; *Whitney* v. *New York Firemen Ins. Co.* 18 Johns. 210, 211; *Ogden* v. *General Mutual Ins. Co.* in New York Court of Appeals (MS.) [referred to in *S. C.* 2 Duer, 205 note, 211, 213, 214]; *Hudson* v. *Harrison,* 3 Brod. & Bing. 97, and 6 Moore, 288; *Rosetto* v. *Gurney,* 11 C. B. 176; *Reimer* v. *Ringrose,* 6 Exch. 266, 267; *Blackett* v. *Royal Exchange Assurance Co.* 2 Cr. & J. 244; *Donnell* v. *Columbian Ins. Co.* 3 Sumner, 266; Benecke on Ins. 448, 449; 1 Arnould on Ins. §§ 22, 31, 83, 87; 2 Arnould on Ins. §§ 318, 356, 357, 373, 374, 397, 413; 2 Phil. Ins. (2d ed.) 210, 211, 454, 464, 467, 498, 499.

*S. Bartlett & C. P. Curtis, Jr.,* for the defendants, besides some of the authorities cited in the opinion, cited *Herbert* v. *Hallett,* 3 Johns. Cas. 93; *Saltus* v. *Ocean Ins. Co.* 14 Johns. 138; *Williams* v. *Kennebeck Mutual Ins. Co.* 31 Maine, 455; *Wain* v. *Thompson,* 9 S. & R. 121; 2 Arnould on Ins. §§ 325, 338, 353 (Amer. note), 374; 2 Phil. Ins. 92, 137.

Shaw, C. J. The policy on which this action is founded was made on the 14th of January 1847, and the defendants thereby insured the plaintiff, for whom it might concern, $6000 on the freight of the Barque Dana, at and from New York to Havre, the freight being valued at the same sum, $6000. The same form

of policy appears to have been used, whether the insurance were on ship, cargo or freight, so that in a policy on freight many of the terms and provisions in the printed part of the policy have no relevancy to the actual subject of the contract.

From the agreed facts it appears that the vessel sailed on the voyage contemplated in the policy on the 27th of January 1847, with a full cargo, on freight payable according to several bills of lading upon the delivery of the goods at Havre. The cargo consisted principally of wheat, flour, green hides, with a few packages of palm leaf, barrels of bacon and kegs of lard.

On the third day out the vessel encountered a violent gale, by which she was thrown on her beam ends, sprung a leak, and a considerable quantity of wheat and flour and of the ship's provisions was thrown overboard to relieve the vessel. In consequence of this disaster, the vessel put back to New York, where it became necessary to discharge the cargo in order to repair the vessel. Most of the articles composing the cargo were more or less damaged, and would require time and expense to put them in a fit condition for reshipment. The owners of the several parts of the cargo, though they had notice of the condition of the goods, declined either to demand them back as they were, or to cause them to be dried and placed in a condition to be forwarded in the vessel, or to require the shipowner to proceed, or to give any directions on the subject; in consequence of which the master sold the goods at auction, and the proceeds came into the hands of the shipowners. They refused to pay over these proceeds to the respective owners and shippers of the goods, without the payment of freight on them. On suit being brought, the shipowners defended. on the ground that freight was due, and that they were not bound to account for the proceeds of the damaged goods unless freight was paid. But it was decided otherwise, and the expenses of those suits are claimed as part of the loss sought to be recovered in this action.* After being repaired, the vessel took in another cargo

---

* The plaintiff, in support of this point, relied upon this clause in the policy: "In case of any loss or misfortune, it shall be lawful for the insured, his factors.

of corn and other articles, and sailed for Belfast, Ireland, and there delivered that cargo and earned freight thereon.

It will not be necessary to state all the facts in detail; the result is, that the part of the cargo, not thrown overboard to lighten the ship, was brought back to New York; that it remained there *in specie,* and after drying and preparation, which would have taken several months, part of it might have been reshipped on board the Dana, or placed on board of other vessels bound to Havre, and in that condition would have arrived at Havre, much deteriorated in value perhaps, but capable of being delivered *in specie* to the consignees. It is conceded that in the mean time freights had considerably risen in price, so that the vessel could obtain a higher freight in a new voyage than she would have been entitled to, had she successfully performed the voyage for which she was insured, and earned full freight therein. It is further conceded that it was for the interest of the owners both of vessel and cargo, and of the insurers of the cargo, that the whole of the cargo brought back should be sold in its damaged condition, as it was, by the master, rather than to be reshipped and forwarded to its original destination. The question is, whether, under these circumstances, the assured are entitled to recover as upon a total loss of freight.

The general rule governing the rights of the respective parties to an insurance on freight, as a distinct and substantive subject of insurance, was fully considered by this court in the case of *M' Gaw* v. *Ocean Ins. Co.* 23 Pick. 405.

The term "freight" has several different meanings; as the price to be paid for the carriage of goods; or for the hire of a

---

servants and assigns, to sue, labor and travel for, in and about the defence, safeguard and recovery of the said freight or any part thereof, without prejudice to this insurance; to the charges whereof the said insurance company will contribute in proportion as the sum insured is to the whole sum at risk." And he cited the following authorities: 1 Arnould on Ins. § 46; 2 Arnould on Ins. § 413, & cases cited; 1 Phil. Ins. 692, 693, & cases cited; 2 Phil. Ins. 243, 464, & cases cited; *Watson* v. *Marine Ins. Co.* 7 Johns. 57; *Hastie* v. *De Peyster,* 3 Caines, 190; *Maggrath* v. *Church,* 1 Caines, 196; *Potter* v. *Providence Washington Ins. Co.* 4 Mason, 298. The defendants cited *Potter* v. *Ocean Ins. Co.* 3 Sumner, 27

vessel under a charter party or otherwise; and sometimes to designate goods carried, as " a freight of lime," or the like. But as a subject of insurance, it is used in one of the two former senses; and in this policy it means plainly the aggregate of the prices to be received, at agreed rates, for the carriage of several parcels of specific goods, as expressed in several bills of lading. According to the well known rule of the maritime law, as between the shipper and shipowner, freight is payable upon goods shipped, on their arrival and delivery to the shipper or his consignee at the place of destination, and not otherwise. The effect therefore of the insurance on freight is a guaranty that the goods shall not be prevented from arriving at the destined port by any of the perils insured against; and consequently, if they are prevented from so arriving by the direct intervention of any of those perils, whereby the shipowner is deprived of the power of receiving his freight from the shipper, the underwriter will pay the loss. If it is a policy on freight of a cargo laden on board the vessel for the voyage described, especially when the vessel has sailed on that voyage, the policy attaches to the freight of that particular cargo. It follows therefore, as a general rule, with some exceptions, that after the policy has so attached to that vessel and cargo for that voyage, if the vessel is wholly lost by one of the perils insured against, the power of earning the freight is lost, and the insurer is liable on his contract. So if the cargo is wholly lost by one of the same perils, it cannot be carried and earn freight, and therefore it is a total loss of freight, and the insurer is liable. The difficulty lies in distinguishing, in particular and often complicated cases, what facts constitute such total loss of either vessel or cargo, and to what extent the effects of such loss may be mitigated or relieved in favor of the different parties interested.

In the present case no question arises in regard to the vessel; for, though she encountered a violent gale at sea, and was damaged by it, yet she came safely back to port, was soon repaired at a comparatively moderate expense, and was capable of proceeding on the voyage again. In respect to what constitutes a total loss of a vessel, involving a loss of freight, some difference

10*

exists between the rule of the English law and that of America, the former considering that she is not totally lost if, in the place where she is, under all circumstances, she can be repaired and put in a condition to prosecute the voyage, at a cost less than her value when repaired; whereas it is held in America that the vessel sustains a constructive total loss, which the owner, if he choose, may treat as a total loss by abandonment, if she cannot be repaired for less than half her value, making customary allowances. But there is no intimation that, under either rule, the Barque Dana had sustained a total loss.

The question then is reduced to this; whether the cargo was so totally lost that it was impossible to carry it forward, and earn the freight, which would be due upon it on delivery; and the court are of opinion that it was not. In deciding this question, we must consider what it would have been necessary for the shipowner, the assured in this case, to do, in order to earn his freight. The rule as between shipper and shipowner is, that if the goods arrive at the port of destination *in specie*, capable of being delivered, the owner has carried and is entitled to receive his freight, although they are so deteriorated, by sea damage or otherwise, that they are of no value. If the goods are carried and ready for delivery, the underwriter on freight has made good his guaranty. If the goods have sustained damage by perils of the sea, the owner of them must look to his underwriter on goods, unless he stands his own insurer; the carrier cannot look to the insurer on freight. The question therefore is, not whether the flour, grain and other articles would have been of any or what value, or of sufficient value to pay the freight, but whether, on such reshipment and arrival, they would have remained *in specie*, as flour, wheat, bacon, palm leaf, &c. If so, then it is clear that they were not so totally lost that the plaintiffs were prevented by the perils insured against from carrying them and earning the freight on them.

The distinction between the case of goods destroyed by a peril of the sea, so that they cannot arrive *in specie*, and goods damaged by a similar peril, and so deteriorated that, though they may arrive *in specie*, they will be of little or no

value, is well established by cases of insurance on goods. It was formerly doubted whether, if goods insured were damaged to more than half their value by a sea peril, and the vessel proceeded to an intermediate port to repair, and the goods when taken out still remained *in specie*, though they would wholly decay before reaching the place of destination, the assured could recover a total loss without abandonment. But it is now well settled that he can. Where hides were thus damaged and carried to an intermediate port, though they remained as hides there, and were sold by the master as hides, yet, it being found that, from incipient putrefaction already begun, they would totally perish before arriving at the port of destination, it was held, that the assured could recover a total loss without abandonment; not because the goods were sold, or because a sale was necessary or expedient; but because the loss was absolutely total, before the sale, by the first peril. *Roux* v. *Salvador*, 1 Bing. N. C. 526, and 3 Bing. N. C. 266; reported also in 1 Scott, 491, and 4 Scott, 1. This case was first tried in the court of common bench, and it was there held to be a total loss, but not recoverable without abandonment, and judgment was given for the defendants. This judgment, upon error, was reversed by the court of exchequer chamber, upon the ground that it was a case of absolute total loss without abandonment; that the peril of the sea affected and injured the goods to such a degree that, before they could reach their place of destination, they would actually have ceased to exist; and that an abandonment was not necessary to give the insurer the benefit of the proceeds, but that such proceeds were a salvage in the hands of the assured, to be deducted from the total loss.

This case of *Roux* v. *Salvador*, though an insurance on goods, and not on freight, is very instructive as to what constitutes an actual or absolute total loss of goods, independently of any abandonment, and in what cases any loss, not absolute, complete or total, may, at the election of the assured, be treated as a technical total loss by abandonment. The voyage was from Valparaiso to Bordeaux, and the vessel went into Rio Janeiro to repair. The hides were damaged by a peril of the sea to

more than half their value, yet remained *in specie;* but the proof was, that, before the hides could reach their port of destination, by the necessary operation of natural causes they would cease to be hides. There was therefore nothing to abandon. In this case, in the court of error, where the case underwent great consideration and the opinion was given by Lord Abinger, the questions of the right of the assured to abandon, and the principle upon which, by the English law of insurance, abandonment is required, are defined with great exactness. Abandonment is held to be necessary only where the subject matter of insurance, be it ship or goods, or some portion of it, specifically exists, and may enure to the benefit of the insurer, if seasonably relinquished to him ; but if the subject matter and every part of it is specifically lost and gone, that subject is totally lost without abandonment. There may be fruits or results of it of great value, as proceeds of sale, in the hands of the assured or his agents, or of public officers, or admiralty courts, or claims over for indemnity against individuals or governments, all which may go to diminish the actual loss. But abandonment is not necessary to enable the insurers to have the benefit of these by way of salvage. If they have been actually realized or received by the assured, by himself or his agents, the amount of such salvage will be deducted from the total loss, on adjustment. If they have not been so received, they will equitably belong to the insurer, after payment of a total loss ; and if they be afterwards received by the assured, it will be to the use of the insurer.

The case is a strong authority to this point; that if goods on board ship are damaged by one of the perils insured against, and upon being brought into a port other than that of their destination, the damage is there found to be of such a nature and extent that, taking into consideration their actual condition, the distance of the port of destination and the time necessary for their transportation to such port, and the nature of the commodities, it can be shown that they must totally perish and cease to exist before they can arrive, then they are in effect totally destroyed by the first direct action of the sea peril, they cannot be carried and delivered to the consignee, so as to enable the shipowner to

earn his freight of the ship.    They are as effectually and com-
pletely destroyed by such peril as if, instead of sea damage, they
had been struck with lightning and consumed.    And in this
respect it seems to us immaterial whether the goods are memo-
randum articles or goods perishable in their nature, or not;
they are as effectually annihilated by the direct action of the
peril insured against, and so totally destroyed by such peril,
for all purposes of earning freight by their carriage, in the one
case, as in the other.    In both cases the shipowner is entirely
deprived of obtaining his freight by a peril insured against;
the loss of that freight is a total loss to him without abandon-
ment.

Another case was cited at the argument as having a strong
bearing on the present case, that of *Hugg* v. *Augusta Insurance
& Banking Co.* 7 How. 595.    It was decided by the highest
authority, the supreme court of the United States, and has a
strong bearing upon some points of the present case.    But
that case differed essentially from the present in many particu-
lars.    It was, like the present, an insurance on freight, of the
Barque Margaret Hugg from Baltimore to Rio Janeiro and
back to Havana or Matanzas or a port in the United States.

The form of the policy in that case does not appear in the
report; but from an authenticated copy, with which we have
been furnished, it appears to have been written on a blank form,
designed to be used alike for insuring ship, cargo and freight in-
discriminately, and contains all the usual clauses applicable to
each subject.    It contained a clause that bar and sheet iron, and
a great variety of enumerated articles usually embraced in the
memorandum, " and all other articles perishable in their nature,
are warranted by the assured free from average, unless general." *

---

* The whole of this paragraph in that policy was thus : " It is also agreed,
that bar and sheet iron, wire, tin plates, salt, grain of all kinds, tobacco, indian
meal, fruits (whether preserved or otherwise), cheese, dry fish, vegetables and
roots, hempen yarn, cotton bagging, pleasure carriages, household furniture, furs,
skins and hides, musical instruments, looking glasses, and all other articles that
are perishable in their own nature, are warranted by the assured free from aver-
age, unless general; hemp, free from average under twenty per cent., unless gen

The effect of this clause was that no partial loss of such articles could be recovered, except as a contribution to general average. The court assumed there, and we think the argument on both sides went on the ground, that that warranty extended as well to partial loss of freight on perishable articles, as to partial loss on the articles themselves; and as the entire cargo on the homeward voyage, to the freight of which the policy attached, consisted of jerked beef, which was a perishable article, and so found by the jury, the whole inquiry turned upon the question whether this cargo had entirely perished so as to prevent the shipowner from proceeding and delivering the residue, and earning the freight on the part so carried, when a considerable portion of the beef remained *in specie*, and might have been transported to the port of destination, in the same or another vessel, in a passage of three or four days.

In the present case, the warranty differs in form, being an agreement that the insurers shall not be liable " for any partial loss on salt, grain, fish, fruits, hides, skins, or other goods esteemed perishable in their nature, unless it amount to seven per cent., and happen by stranding ; nor for partial loss on other goods, or on the vessel, *or freight*, unless it amount to five per cent. ; exclusive, in each case, of all charges and expenses of ascertaining and proving the loss." On such a policy, it may well be doubted whether insurers on freight, even on perishable goods, would not be liable for a partial loss on freight exceeding five per cent. by a general ship, and on a cargo consisting of various articles, some perishable and others not.

But there is another particular in which this case differs essentially from that of *Hugg*, which is, that in that case the whole cargo on which freight was to be earned consisted of one perishable article, belonging to the same owner ; but in the present case the cargo consisted of various articles forming several shipments, from distinct owners, and therefore the same objection

eral ; and sugar, flax seed and bread are warranted by the assured free from average under seven per cent., unless general ; and coffee in bags or bulk, and pepper in bags or bulk, free from average under ten per cent., unless general."

does not lie against a recovery for a partial loss of freight, partial only because some portion of the freight was or might have been earned, but, as far as it went, total in its nature, leaving nothing to abandon, and entitled to no salvage.

When, therefore, we say that the case of *Hugg* v. *Augusta Insurance & Banking Co.* is a strong authority in the present case, we mean this; that it establishes conclusively these points: that when goods are shipped on board of a vessel, to be carried to a designated port, whether consisting of perishable or other articles of merchandise, if they remain *in specie* and arrive, the shipper on delivery will be bound to pay the stipulated freight, although the goods are damaged by perils of the sea so as to be utterly worthless; that although the voyage may be retarded, though the goods may be long detained at an intermediate port, and be found to be much damaged, but still can be carried on to the place of destination and there delivered *in specie*, if the shipowner, or the master as his agent, where it is most for the interest of the shipowner and owner of the goods, leaves them or sells them at such port of refuge, he fails indeed to earn the freight which he might have earned; but such failure is not caused by the perils insured against, but by the voluntary act of the assured, and so the underwriter on freight is not liable for such loss.

It is stated, as a fact agreed in this case, that the act of the master in making sale of the damaged goods, the owner of those goods having declined to give any directions respecting them, was a proper and reasonable course so far as all interests were concerned, except that of the underwriters on freight; and the plaintiff alleges, and the defendants deny, that it was also most for the interest of these underwriters. We consider this question as wholly immaterial; that the propriety of such sale of the damaged cargo was a question solely between the master and the owners of the goods, with which these underwriters had no concern; and it should be decided on its own considerations, in the same manner, whether the shipowners had their freight insured or not. One thing is certain, that the master had the rightful possession of the goods for the purpose of carriage, and

that the owners of the goods could not rightfully demand and obtain the possession, and thus deprive the shipowners, without their consent, of the right of carrying the goods forward, damaged or undamaged, without paying the full freight due on them by the bill of lading. If, therefore, the shipowners, or the master in their behalf, sold the goods whilst they remained *in specie* and might have gone to their destination, they lost their freight, not by any one of the perils insured against, but by their voluntary preference to abandon the voyage and employ their vessel in some other enterprise.

A very similar case was decided by this court, *Clark* v. *Massachusetts Fire & Marine Ins. Co.* 2 Pick. 104. It was an insurance on freight on a large shipment of tobacco from Richmond, Virginia, to Nice. The vessel met with sea damage, and put into the port of Kennebunk to repair. The vessel could be seasonably repaired, though the necessary delay would prove a serious damage to the owner of the tobacco, by the state of the market; and by mutual consent the shipper received the tobacco to be forwarded by another vessel, stipulating to pay freight *pro rata itineris*, if any was due; but it was found that freight was as high from Kennebunk to Nice as from Richmond, and so no freight *pro rata* had been earned. In a suit against the underwriter on freight, it was held by the court that, the property having been thus voluntarily surrendered and the voyage relinquished, the loss of freight was not occasioned by any peril insured against, and that the underwriter was not liable.

We do not mean to intimate that the sale of the goods by the master in New York, diminished as they were in quantity, and in their damaged condition, was not a prudent, justifiable and proper measure, beneficial to all parties. On the contrary, so far as the case throws any light on the subject, we think it was so. But if anybody could complain, it would be the owner of the goods, against the master and shipowners, for a noncompliance with their contract to carry the goods as stipulated in the bill of lading; and whether the master could justify himself against such claim by the exception of perils of the sea, was solely a question between him and the shippers. In point of

fact the owners of the goods afterwards affirmed the act of the master in making the sale, by claiming the proceeds of the goods thus sold. As he professed to act as their agent in making the sale, their claiming the proceeds afterwards amounted to a ratification, and made the sale good. But if the shipowners, by the master acting under their direction, determined to relinquish the voyage, and redeliver the damaged goods to the shippers, whether entitled to receive any freight *pro rata* upon them, or to sell them on shippers' account, if the damaged goods or any part of them remained *in specie*, and might have been delivered at the place of destination, damaged or undamaged, and earned freight, then the assured voluntarily abandoned his claim for the freight of these goods on this voyage, and therefore has no claim for the loss of such freight against the insurer on freight.

In the case of *Hugg* v. *Augusta Insurance & Banking Co.*, already cited, it was held that, in construing the contract of insurance of freight, the interest of the insurer and of the assured in the cargo was not to be taken into account, nor in any way regarded, in determining whether a total loss of freight had happened from any of the perils insured against. The questions are distinct, as they affect the construction of contracts made *diverso intuitu.*

The doctrine that the contracts of owners and shippers and the several classes of insurers are distinct, and to be governed by considerations severally applicable to each, and the nature and obligation of the contract of insurance on freight, are well illustrated by a late case in the House of Lords. *Scottish Marine Ins. Co.* v. *Turner*, 1 Macqueen, 334, and 4 H. L. Cas. 312, note. It was an insurance on freight from Quebec to Liverpool. The vessel met with damage by perils of the sea and sprung a leak, but was kept afloat by pumping, and arrived at Liverpool, where the cargo of lumber was delivered to the consignee and the freight paid. But the vessel, being found to be a wreck, was abandoned to the underwriters on the vessel; yet as the abandonment related back to the time of the disaster, it was held to carry all the pending freight, not then fully earned and due, with it, and therefore the shipowners who had received the

freight were held bound to account for it to the abandonees, the insurers of the ship. *Stewart* v. *Greenock Marine Ins. Co.* 2 H. L. Cas. 159, and 1 Macqueen, 328. Upon this, the assured in the policy on freight brought this action to recover a loss, on the ground that, although the cargo reached its port of destination, and freight on it was paid by the consignees to the shipowners, yet they could not hold it to their own use ; that it was received to the use of the abandonees of the ship, which was lost by a sea peril, and therefore the freight was lost to them by such peril. But it was decided by the House of Lords, reversing the judgment of the court of Scotland, that when the cargo was brought to its port of destination, though in a wrecked ship, the contract of the insurer on freight was fulfilled ; that whether the owners of the vessel had an insurance on the vessel or not, and what were the terms of that contract, were immaterial to the insurer on freight; that if the shipowners abandoned their freight to their insurers, it was in pursuance of a contract with which the insurers on freight had no concern, and that they were not liable.

Having cited this case as an authority, it seems proper, in order to avoid a misapplication of it, to notice that a different rule prevails in Great Britain and this country, in regard to the relative rights of shipowners on the one side, and the respective insurers of ship and freight on the other. By the British law, no freight is considered as earned until the arrival of the ship and goods ; and there is no apportionment of a pending freight, not actually accrued ; and therefore if there be an abandonment of the vessel, in consequence of a disaster occurring during the voyage, though at a late period of it, the whole of such freight passes to the abandonee of the ship, and no part of it to the insurer of freight, even though freight may have been in form abandoned to him. But by the American rule such freight is equitably apportioned, according to the proportion of the voyage performed at the time of the disaster, to which time the abandonment in both cases must refer back. What was equitably earned before that time goes to those who are previously entitled to the earnings of the vessel, or their abandonees, the

insurers of freight; that part earned after such disaster goes to the abandonees of the ship, as owners from that time. If at that time, by a fair estimate, nine tenths of the entire voyage have been performed, the abandonees of freight will be entitled to nine tenths, and the abandonees of the ship to one tenth of the freight for the voyage. It seems necessary that this difference be borne in mind in citing English authorities, in reference to American cases, both in reference to the rights of parties and as to the necessity and legal effect of abandonment on freight policies. Mr. Arnould admits that the American rule of apportioning the freight in such cases is more equitable, more consonant with the theory making insurance a contract of indemnity, than the English, and equally practicable; but he shows from unquestionable judicial authority that the contrary rule is there well established. *Case* v. *Davidson,* 5 M. & S. 79, and 2 Brod. & Bing. 379. 2 Arnould on Ins. § 399. 2 Phil. Ins. (3d ed.) § 1649.

It appears by the facts agreed in this case, that though a large part of the cargo was more or less damaged by the disaster, yet some considerable part of it was saved, and remained *in specie* and might have been transported to Havre ; that the vessel was repaired and competent to carry it, and therefore the freight insured was not totally lost by a peril insured against.

There is no ground for maintaining that the plaintiffs could successfully claim any freight *pro rata itineris ;* both because the owners of the goods did not demand that their goods should be delivered up at New York ; and because they were brought back to the port of shipment, and no beneficial service had been done by the shipowners. *Vlierboom* v. *Chapman,* 13 M. & W. 230.

This is also an answer to the claim of the plaintiffs to recover in this suit a proportion of the expenses of defending the suits brought against the plaintiffs by the owners of the goods, for the proceeds of those sold. There was no plausible ground on which the plaintiffs, as shipowners, could contend that they had any claim against the shippers, by way of lien, set-off or otherwise, for the payment for freight of the goods taken out and left at New York.

If any reliance is placed on the fact set forth in the agreement,

that the Barque Dana subsequently proceeded on another voyage to Europe and obtained freight, and that such freight can enure, by way of salvage or otherwise, to the benefit of the defendants, it is a sufficient answer to repeat that this policy was an insurance on a specific cargo; that the policy had attached and the risk commenced. The voyage afterwards made was a different voyage, to a different port, with a different, though somewhat similar cargo, shipped by other parties. *Jordan* v. *Warren Ins. Co.* 1 Story R. 342, and authorities there cited.

There is no ground to insist that a salvage freight might have been obtained by forwarding the goods by another vessel; for it is agreed that freights were higher from New York to Havre after the vessel returned to port, than the rates stipulated to be paid on the original shipment.

As far as we can perceive from the facts agreed, the course pursued by the master and shipowners, though it might exempt the insurers from further insurance on freight, by the voluntary relinquishment of the voyage, was best for all parties concerned; for the owners of the vessel, because it relieved her from a burdensome enterprise, and enabled the owners immediately to employ her in other, perhaps more profitable service; for the owners of the goods, and their insurers, if any, because it relieved them from the expense of preparing the goods for reshipment, from the danger of further deterioration and loss of value of the damaged goods, and from the payment of freight. And the goods may have sold for as much in their damaged state, at New York, as they would at Havre.

In coming to the conclusion that this was not a total loss of freight, we place no reliance on the fact that there was no abandonment. We are of opinion, that if it was not an actual total loss in its nature, it was not a loss which would enable an assured, by an abandonment, to recover as upon a technical total loss. An abandonment must be of some part or portion of the subject insured. If that subject, whatever it is, is absolutely gone, beyond the control of the assured, though there may be proceeds of sale or other salvage, yet of that the insurer will have the benefit, without abandonment. This distinction was

the sole ground of decision in the case of *Roux* v. *Salvador*, before cited. See *Smith* v. *Manufacturers' Ins. Co.* 7 Met. 448. If the assured has already received it at the time of adjustment, the insurer will have credit for it as a deduction from the total loss ; if not, and if a total loss is paid to the assured, anything received by the assured afterwards, by himself or his agents, he will hold to the use of the insurer, and an action will lie for it. Considering abandonment then as strictly applying to the subject of insurance, and in this case to the freight, there was clearly nothing to abandon. No freight *pro rata itineris peracti* had been earned, because the goods were brought back to the port of shipment ; there was no valuable right to earn freight, by forwarding the goods capable of being transported to Havre, because it would cost more than the freight to forward them. There was no freight earned on that voyage, which, according to the American rule, contrary to the English as above stated, could have been apportioned, so that an equitable part might vest in the abandonee of the ship, and another part in the abandonee of the freight ; so that the same rule which governs the right of the assured on freight to recover a total loss, as held in the English courts, is applicable to this case. That such loss of freight, if not total in its nature, cannot be converted into a technical total loss by abandonment, seems to be well settled. *Green* v. *Royal Exchange Assurance Co.* 6 Taunt. 68, and 1 Marsh. 447. *Idle* v. *Royal Exchange Assurance Co.* 8 Taunt. 755, and 3 Moore, 115 *Mount* v. *Harrison,* 4 Bing. 388, and 1 Moore & Payne, 14. An offer to abandon, or an actual formal abandonment of freight in this case, would not have altered the character of the loss.

That when goods taken on freight are damaged by a peril of the sea, and require some time to dry and reship them, the freight is not lost, is a well settled principle of maritime law. The shipowner has a lien upon the goods shipped, and is not bound to deliver them without payment of full freight. If such freight is paid, there is no loss on freight, and of course the insurer of that subject is discharged. If the shipowner volun-

11 *

tarily delivers them up, and the owner of the goods consents to receive them, which may be for the best interest of both; so if the owner of the goods, having notice, declines to interfere, and the master, as agent for both parties, and for their mutual interest, sells them, and they affirm such sale and claim the proceeds, as in the present case; in all these cases the freight on these goods is gone; but it is not lost by one of the perils insured against.

A few more direct authorities on this point are here stated. Where, upon a policy on freight of goods, part were wetted with sea, and could not be safely reshipped without drying, which would take six weeks, and the ship went on and left them, the freight was lost; but the insurers of freight were held not liable. *Mordy* v. *Jones*, 4 B. & C. 394, and 6 D. & R. 479. *Griswold* v. *New York Ins. Co.* 1 Johns. 204.

A similar point was decided by this court in the case of *M'Gaw* v. *Ocean Ins. Co.* 23 Pick. 405. In that case the ship could have been repaired seasonably, or the goods might have been forwarded in another, though not on terms which would have caused any saving of freight. They were sold by the master, and it was probably most for the interest both of the shipowners and shippers that they should be sold; but it was held, that for such loss of freight the insurer on freight was not liable.

But in the present case there was a loss of freight, to a considerable extent, by the jettison of part of the goods from which it would have accrued, on the voyage to the place of destination, and other goods absolutely lost. That jettison is a loss by perils of the sea, as well of freight as of goods, hardly needs authorities to support it. *Butler* v. *Wildman*, 3 B. & Ald. 398.

Nor is the owner of goods jettisoned bound to wait for the adjustment of the general average before calling on the underwriters on freight, and in the first instance to seek his indemnity from the other contributory interests; but he may proceed at once by action against his insurers; and if salvage is realized before the adjustment of the loss, by verdict or otherwise, it should be deducted, otherwise it will enure as salvage to the

insurer.* *Maggrath* v. *Church,* 1 Caines, 215. *Watson* v. *Marine Ins. Co.* 7 Johns. 62. *Vandenheuvel* v. *United Ins. Co.* 1 Johns. 435. *Forbes* v. *Manufacturers' Ins. Co.* 1 Gray, 371.

It appearing, then, by the uncontested facts in the case, that a considerable part of these goods could have been forwarded by the same or another ship, by which freight could be earned; and this not having been done, but the goods sold by the master, acting as agent for the owners of the goods, upon considerations of expediency not affecting the underwriters, in consequence of which there was not an actual or complete total loss; and that it was not a loss of part, which could be made a technical total loss by abandonment, because no abandonment was in fact made, and because it was not a case where the assured could abandon; therefore the court are of opinion that the plaintiff cannot recover for a total loss; but his claims, whatever they are, must be determined by an adjustment as of a partial loss.

The foregoing is in substance the opinion delivered after the former argument. Upon revision, some additional views and illustrations have been stated, and some further authorities cited, in the hope of making it more intelligible.

This opinion having been drawn up and placed in the hands of the reporter, it thus came to the knowledge of some of the parties, whereupon the counsel for the plaintiff made an application to the court for a rehearing, on the ground that the case had not been fully understood, or that some omission or mistake had occurred; in consequence of which no judgment was entered. A rehearing was had, and we have greatly to regret that various circumstances have occurred to cause an unusual delay in bringing the case to a final result.

---

* The defendants, upon this point, relied on the following clause in the policy: "In case of loss, such loss shall be paid in sixty days after proof and adjustment thereof; the amount of the premium note, if unpaid, and all sums due to the company, from the insured, when such loss becomes due, being first deducted, and all sums coming due being first paid or secured to the satisfaction of the said president and directors, they discounting interest for anticipating payment."

On the rehearing, and in urging the plaintiff's claim for a total loss, the counsel for the plaintiff take a view of the facts in some respects perhaps different from the case as we understood it. We were governed by the main facts as they appeared on the agreed statement. It is true that the deposition of the mate, and some other written evidence, were referred to ; but we did not consider that the court were called on to decide contested facts, or draw inferences from evidence. And we have no occasion, it is believed, to refer to that evidence, because, in our view, not affecting any material fact bearing on the case. We considered the case as it appeared in the agreed statement.

It is now insisted, that by the agreed statement, it was agreed and conceded that all the wheat, which was the bulk of the cargo, except six hundred bags, was totally lost for the purpose of being carried to Havre and earning freight. If by " totally lost" the parties meant " physically destroyed," " annihilated," " ceased to exist *in specie* " or retain the character and name in which it was shipped, perhaps we might not have distinctly understood it as going to this extent. The principle we intended to state was, that if it had not ceased to exist *in specie*, though it might be greatly damaged so that upon arrival it would not be worth the sum payable for the freight, still the shipowner had earned his freight, the shipper was bound to pay it on delivery or tender of the damaged goods, the freight was not lost by a peril insured against, and the underwriter was not liable on his contract.

This was the precise point of view in which the facts were to be considered. If the parties intended to be understood that the great bulk of the wheat, in bags, could not have arrived at Havre *in specie*, as wheat — damaged wheat, it may be, sour, musty, incapable of beneficial use, but still wheat — all doubt and ambiguity would have been avoided by agreeing to this in explicit terms. In regard to some portion of the wheat, it was agreed that it could not have been so dried, separated and prepared as to have arrived *in specie ;* but the plaintiff alleged that the expenses would have exceeded the value of the goods on arrival.

Lord *v.* Neptune Insurance Company.

Without going into details as to the part of the cargo wholly destroyed or more or less damaged, we were led to suppose that the parties did not, by this paragraph of the statement, mean to agree that the great bulk of the wheat was absolutely annihilated and destroyed; partly by a supposition that, from the nature of the article, wheat in bags, though wet and damaged, it might not wholly perish in a voyage across the Atlantic; and partly because the reduction in the value of the goods shipped, by the perils of the sea, so as on their arrival not to be worth the amount to be paid for their freight, has in some of the earlier cases been regarded ·as a test of the carrier's right to leave or sell them, and claim a total loss. If in fact it was understood and agreed that all the wheat except six hundred bags was so far injured by sea damage that it would cease to exist before arrival, it would have been easy to avoid all ambiguity by adding to the terms that it could not be restored so as to arrive at the port of destination, the words " *in specie*," or " as wheat," or some equivalent expression.

But·however the fact was; or in whatever sense the parties intended to be understood, in the agreed statement of facts; or whether the court in any respect took a mistaken view of that statement, in its details; it will not vary the result to which we formerly came, that the plaintiff cannot recover for a total loss, and that whatever claims he has against the defendant company must be adjusted as a partial loss. A total loss of part of the freight insured is a partial loss. *Moss* v. *Smith*, 9 C. B. 94.

These different views of the facts may indeed make a great difference as to the amount that the plaintiff may be entitled to recover by the adjustment of a partial loss. It is an uncontested fact, that the vessel on her passage, after the policy on freight had attached to that cargo, on that voyage, was struck and overset by a peril of the sea, and the wheat thereby became wet and damaged. Now, if that damage is found to have been immediately attended with incipient decay, and when landed it was in such progress of deterioration that it could not possibly reach Havre as wheat, but in the mean time would totally perish, it would follow, upon the principles hereinbefore stated, that it

was an entire loss of part of the merchandise, and so a loss of the freight to accrue upon carrying it safely. But this is a question of fact, to be carefully and fully considered in settling the items of a partial loss; and possibly the facts to be ascertained by the assessor, pursuant to the agreement of the parties, may throw some light on the subject.

In adjusting the loss of the plaintiff as a partial loss, the valuation of the freight in the policy, whether more or less than the freight actually chargeable on particular goods, is to be taken as the basis of computation; and every item of freight lost, and every item on which no loss of freight occurred, because the goods were voluntarily surrendered, is to be computed according to the proportion it bears to the whole freight as valued in the policy.

In consequence of the alternative view of the facts here alluded to, and in order to meet one view taken in the argument, it is proper to add that if it should turn out that goods yielding more than half the freight were wholly lost, and so more than half the freight lost, still it would not, in analogy to the case of goods lost or damaged to more than half their value, warrant an abandonment and a recovery for a total loss, had there in fact been an abandonment in the present case. Each item of loss was complete in itself, and no abandonment could enlarge or change it. For the reasons before given at large, there could be no abandonment, because there was nothing to abandon. Abandonment must be of the subject, or some portion or remnant of it. Here the subject was freight, and there was no freight, or claim to freight, actual or possible, which could enure to the underwriters by abandonment.

The loss then is to be adjusted as a partial loss, not because each item of which it is composed was not complete and total in itself, but because the entire aggregate of such absolute losses does not amount to the whole freight put at risk, and insured by and valued in the policy.          *Case referred to an assessor.*